O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| KATHY WRIGHT,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>UNITED PARCEL SERVICE INC., a corporation and DOES 1 THROUGH 50,<br><br>　　　　　Defendants. | Case No.: SACV 11-1563 DOC(RNBx)<br><br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Motion for Summary Judgment (Dkt. 11) filed by Defendant United Parcel Service ("Defendant"). After considering all papers related to the Motion and oral argument, the Court GRANTS the Motion.

## I.    Background

The gravamen of the Complaint is that Defendant violated California laws by failing to reinstate Plaintiff Kathy Wright ("Plaintiff") when she sought to return to work after a two-year-

long medical leave due to disability and that Defendant did not engage in an interactive process with Plaintiff to accommodate her disability.  *See* Notice of Removal (Dkt. 1) Ex. 1 (Compl.).

The following facts are not genuinely disputed or, if disputed, are those facts most favorable to Plaintiff.

### a.  1983 through July 2007: Plaintiff works as a driver for Defendant

It is undisputed that Plaintiff Kathy Wright worked for Defendant beginning in 1983. Def.'s Reply Statement of Facts 1/4 (Dkt. 34-5) at ¶1.  Plaintiff worked first in the position of a "Package Car Driver," and then, when her route was dissolved, worked as a "Utility Driver."  *Id.* at ¶13.

The parties dispute the ultimate legal conclusion of whether an essential function of a Utility Driver position was lifting packages of up to 70 pounds without assistance and up to 150 pounds with assistance.  On this issue, Plaintiff has presented no evidence and Defendant has presented the following evidence:

- A document ("Driver Essential Job Functions Form") created by Defendant's legal department which describes the "Essential Job Functions" of six "Driver" positions, including a "Utility Driver," as including "lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds and to assist in moving packages weighing up to 150 pounds."  NOL 3/4 (Dkt 14) Ex. 45.  The document also has the disclaimer that "the essential functions of this job may vary greatly depending upon the size and location of the UPS facility" and "[a]t some locations, employees may not perform all of the essential job functions listed above."  *Id.*

- Plaintiff's testimony in her deposition that she "agree[d] that the job of a driver requires [Plaintiff] to be able to do these things" listed in the Driver Essential Job Functions Form, namely, "[l]ift, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds" and "[a]ssist  in moving packages weighing up to 150 pounds," with the caveat that, regarding the word "assist," Plaintiff's experience showed that "at least 80 percent of the time you're moving those packages by yourself."  NOL 1/4 (Dkt. 12) Ex. 2 (Pl. Depo. at 40:25-41:18).

- Plaintiff's testimony that she "[a]bsolutely [could] not" have "done the job of utility driver without an accommodation."  See NOL 1/4 (Dkt. 12) Ex. 2 (Pl. Depo. at 153:22-154:5).

- The statement in a November 20, 2009, Request for Medical Information by Plaintiff's treating physician, Dr. Baird, that Plaintiff was not "able to perform all of the functions of his/her position" because she "Cannot lift greater than 20 lbs overhead" and "Cannot lift > 75 lbs with assistance."  NOL 2/4 (Dkt. 13) Ex. 24; Def.'s Reply Statement of Facts 4/4 (Dkt. 34-8) at ¶17.

- The statement in a November 19, 2009, Preliminary Report AME/QME by the AME, Dr. Alban, that Plaintiff's "Permanent disability" meant that she "cannot return to []her usual and  customary work."  NOL 2/4 (Dkt. 13) Ex. 23.

### b.  July 20, 2007: Plaintiff suffers a work-related injury resulting in her ultimately taking two years of medical leave due to her disability

On July 20, 2007, Plaintiff reported a work-related injury to her right shoulder after lifting packages weighing about 40 pounds from the top shelf of a truck.  Pl. Depo. 102:13-103:7.

In September 2007, Plaintiff's physician declared her totally temporarily disabled and Defendant approved Plaintiff's request for a leave of absence.  Pl. Depo. 106:14-107:1. Plaintiff remained on leave for over two years, during which she underwent surgeries in February 2008 and July 2009.  Def.'s Reply Statement of Facts 1/4 (Dkt. 34-5) at ¶3; Pl. Depo. 121:17-122:7.

### c.  October 30, 2009: Plaintiff's primary physician writes an ambiguous letter suggesting he "believe[s]" Plaintiff "should be able to return to work in approximately two weeks" and "without limitations or restrictions"

In a letter dated October 30, 2009, Plaintiff's primary physician, Dr. Baird, states:
Kathy Wright returns to the office with symptoms that are somewhat improving, although it is often true that her transient sharp pain occurs especially when she

adducts her right shoulder girdle across her chest but also may occur with should abduction.

The patient believes she is improving in terms of strength.

Therefore, I believe that she should be able to return to work in approximately two weeks, November 15, 2009.  I am returning her to work without limitations or restrictions.  <u>She should work to keep lifting, pushing and pulling directly in front of her chest, not off the side.</u>

Def.'s Notice of Lodgment ("NOL") 1/4 (Dkt. 12) Ex. 14 (underline in original); Def.'s Reply Statement of Facts 4/4 (Dkt. 34-8) at ¶104.

> **d.   November 19, 2009: Plaintiff's physician in her workers compensation case states that she "should not be required to lift more than 10 pounds," cannot "work at or above shoulder level with the right upper extremity," and her "usual and customary job duties . . . are beyond her capacity"**

At some point in time, Plaintiff initiated a workers compensation case that was then appealed.  On November 19, 2009, Dr. Alban wrote an Agreed Medical Reexamination ("AME") of Plaintiff for the workers compensation appeal board.  NOL 2/4 (Dkt. 13) Ex. 21 at 1.  In that AME, Dr. Alban made the following relevant statements:

- "[Plaintiff] has been a 'Driver' for [Defendant] for approximately 25 years.  Her job involved repetitive lifting, pushing, pulling and carrying of packages weighing up to 70 pounds."
- "[Plaintiff's] condition is permanent and stationary with the factors of disability as described in my February 2009 report and June 2009 report."
- "[Plaintiff] has an additional period of temporary total disability due to her second surgery performed in July 2009.  It is reasonable that she was temporarily totally disabled from the time that she underwent surgery through November 19, 2009."
- "[Plaintiff's] should not be required to lift more than 10 pounds, and is precluded from work at or above shoulder level with the right upper extremity.  Her usual and customary job duties as a 'Driver/Delivery Person' are beyond her capacity.

She will be capable of performing a clerical job if available.  Otherwise, she will require vocational rehabilitation."

NOL 2/4 (Dkt. 13) Ex. 21 at 8-9.

In addition, in a November 19, 2009, Preliminary Report AME/QME, Dr. Alban, who is the AME in Plaintiff's workers compensation case, stated that Plaintiff's "Permanent disability" meant that she "cannot return to []her usual and  customary work."  NOL 2/4 (Dkt. 13) Ex. 23; Mot. at 6 n. 2.

**e.   November 20, 2009: Plaintiff's primary physician writes that Plaintiff "cannot lift greater than 20 lbs overhead" and "cannot lift > 75 lbs with assistance"**

Upon being notified of Plaintiffs' potential return, Defendant gave Dr. Baird a Request for Medical Information form and the Package Car Driver job description to assess her current limitations and ability to perform the essential job functions.  *See* Duncan Decl. (Dkt. 11-3) ¶ 13.  On November 20, 2009, Dr. Baird completed the Request for Medical Information form as follows:

1. Is the employee able to perform all of the functions of his/her position?

    ___ Yes   _[check mark]_ No

2. If the answer to Question 1 is "no," using the enclosed essential job functions form, please identify the specific function(s) of the position that the employee is unable to perform.

    ■ Cannot lift greater than 20 lbs overhead

    ■ Cannot lift > 75 lbs with assistance

    ■ No other restrictions

3. . . .

    . . . describe the activities using that the employee can perform within the restriction (e.g. although the employee cannot lift over 40 pounds, she can lift 10 pounds frequently and 25 pounds occasionally).

    ■ May lift up to 20 lbs frequently

■ May lift up to 75 lbs (with assistance) occasionally

Def.'s Notice of Lodgment ("NOL") 2/4 (Dkt. 13) Ex. 24; Def.'s Reply Statement of Facts 4/4 (Dkt. 34-8) at ¶17.

### f. January 8, 2010: Plaintiff meets with Defendant to determine how she can be accommodated

On January 8, 2010, UPS Occupational Health Supervisor Bethany Duncan and UPS District Workforce Planning Manager Steve Redding met with Plaintiff and her union representative to discuss Dr. Baird's restrictions and potential accommodations.  Pl. Depo. 145:11-20.  The same day, Plaintiff filled out an "Accommodation Checklist" in which Plaintiff identified "Current Position: Pkg [sic] Car Driver" and "Current Limitations in Position as a Result of Self-Identified Condition: Weight limit restrictions 20 lbs + overhead restriction." NOL 2/4 (Dkt. 13) Ex. 26 at 192.  Plaintiff indicated her "Desired Accommodation(s) With Respect To Current Position" as "Full time Air Driver," "Shuttle Driver," "Automatic transmission power steering," "Reducing frequency of heavy packaging." *Id.*  Plaintiff identified "Other Desired Accommodations" as "full time only," "porter," "combo clerk," "clerical," "customer counter," or "anything." *Id.*

### g. January 22, 2010: Defendant denies Plaintiff's requests for accommodation

Defendant filled out the Accommodation Checklist on January 22, 2010, with an explanation as to why each of Plaintiff's requested accommodations were not available.  For example, the Accommodation Checklist shows that the accommodation of transfer to a new position of "Clerk (combo)," "Porter," or "Customer Counter" was not possible because there was no "Availability." *Id.* at 194.  For the accommodation of transfer to a new position of "FT Air Driver," "Shuttle Driver," or "Less pkgs [sic] in car," there was a "conflict" with the "collective bargaining agreement." *Id.* at 194.

### h. February 26, 2010: Plaintiff's physician states that she is "able to return to work" immediately but with "restrictions" including "not lifting over 40 pounds"

In a document titled "Return to Work" dated February 26, 2010, a doctor stated that Plaintiff is "able to return to work on 2/26/10" with "[r]estrictions" of:

- Automatic transmission vehicle
- no lifting over 40 pounds
- occasional overhead lifting

NOL 2/4 (Dkt. 13) Ex. 29; Mot. at 7:26-27.

### i. March 20, 2010: Defendant again denies Plaintiff's request for accommodation

On March 10, 2010, Beth Duncan sent an email which asks "Do we have any 'full-time only' union positions in Laguna or Anaheim that are not required to lift more than 40 lbs?" *See* NOL 2/4 (Dkt. 13) Ex. 33.  Redding replied "No, not at this time." *Id.*

### j. April through May 2010: Plaintiff applies for and ultimately receives social security disability benefits

Around April or May 2010, Plaintiff applied for Social Security Disability Benefits.  *See* Pl. Depo. 224:11-21; NOL 2/4 (Dkt. 13) Ex. 34.  This application was approved and Plaintiff received disability benefits dating back to May 2009 and a monthly disability benefit beginning in August 2010.  *See* Pl. Depo. 227:2-228:7.

### k. May 14, 2010: Plaintiff resigns from Defendant and obtains additional disability benefits

On May 14, 2010, Plaintiff resigned from Defendant.  Pl. Depo. 176:14-22.  On May 13, 2010, Plaintiff applied for the Teamsters Pension Fund.  *See* Pl. Depo. 213:15-215:8.  The Teamsters Pension Fund approved her application with a retroactive disability retirement date of May 1, 2009.  *See* Pl. Depo. 215:9-216:1.

### l. Plaintiff files the present action

Plaintiff filed a Complaint ("Complaint") on June 16, 2011.  *See* Notice of Removal (Dkt. 1) Ex. 1 (Compl.).  The action was removed to this Court on October 11, 2011.  The Complaint brings six claims: (1) age discrimination in violation of FEHA; (2) disability discrimination in violation of FEHA; (3) failure to provide reasonable accommodation under FEHA; (4) failure to

prevent discrimination and retaliation under FEHA; (5) retaliation; and (6) wrongful termination in violation of public policy. *See* Compl. at ¶¶.

## II.    Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III.  Discussion

### a.  Plaintiff's claim for disability discrimination under FEHA

Plaintiff's claims for disability discrimination appears to arise from Defendant's failure to reinstate her to a Driver position after she returned from two years of medical leave, in violation of California Government Code 12940(a).  *See* Compl. ¶¶ .  Section 12940(a) provides in relevant part that it is "an unlawful employment practice . . . [f]or an employer, because of the "physical disability, . . . [or] medical condition . . . to bar or discharge the person from employment or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."  Cal. Gov't Code §12940(a).[1]  Section 12940(a) is part of a larger statutory scheme commonly referred to as the "California Fair Employment and Housing Act (FEHA)."  *See Reid v. Google*, 50 Cal. 4th 512, 519 (2010) (describing "12900 et seq.").

Under California law, employment discrimination is often proved through any of three alternative legal theories: (1) disparate treatment discrimination; (2) disparate impact discrimination; or (3) the failure to make reasonable accommodation where required.  Cal. Bus. Law Deskbook § 14:8 (2011 ed.).  "Disparate treatment" is where the employer engages in "*intentional* discrimination against one or more persons on prohibited grounds."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 n. 20 (2000).  In contrast, "disparate impact" is where "a *facially neutral* employer practice or policy, bearing no manifest relationship to job requirements, *in fact* had a disproportionate adverse effect on members of the protected class.  *Id.*

While Plaintiff never explicitly states which theories she is pursuing, the Court concludes that she is advancing both: (1) a disparate treatment theory; and (2) failure to make reasonable accommodation.  The Court assumes that Plaintiff is pursuing a disparate treatment theory because Plaintiff contends that Defendant's reason for refusing to reinstate her is per se discrimination and because Plaintiff does not suggest that Defendant has a policy that adversely affects people with his disability as compared to other workers.  *See Carter v. CB Richard Ellis*,

---

[1] The parties do not dispute that Plaintiff's physical ailments constitute a "physical disability" or "medical condition" for purposes of FEHA.

*Inc.*, 122 Cal. App. 4th 1313, 1324 (2004); Cal. Bus. Law Deskbook § 14:8 (2011 ed.)

("[W]here an employer's policies or practices adversely affect all employees, regardless of their

membership in a protected class, plaintiffs would fail to establish a prima facie case of

discrimination using a disparate impact theory.").

The Court need only address two of the parties' several major disputes regarding whether

Plaintiff can establish a prima facie case under a disparate treatment theory of disability

discrimination under FEHA.  First, the Court rejects Plaintiff's argument that the *McDonnell*

*Douglas* burden-shifting scheme does not apply here because Plaintiff have failed to show that

she is proving her case with direct evidence of discrimination.  Next, the Court agrees with

Defendant that Plaintiff can not show the second element of her prima facie case because one of

those essential functions of the Driver position was to lift up to 70 pounds without assistance

and Plaintiff's doctors confirm she was not able to do so during the relevant time period.

### i. The *McDonnell Douglas* burden-shifting scheme applies here

The parties first dispute whether this Court must apply the *McDonnell Douglas* burden-

shifting scheme to Plaintiff's claims because, Plaintiff contends, these claims will be proved by

direct evidence, namely, that Defendant's "policy" required Plaintiff to be "100% healed" before

returning to work.  *See* Opp'n at 19.  Plaintiff is correct that "the *McDonnell Douglas* test is

inapplicable where the plaintiff presents direct evidence of discrimination."  *Trans World*

*Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).  However, Plaintiff is not presenting "direct

evidence" here; to the extent that Defendant's individual employment decisions regarding

Plaintiff can be construed as a "policy," this policy did not require Plaintiff to be healed, but

rather to lift a certain amount of weight.

"When entertaining motions for summary judgment in employment discrimination cases

arising under state law, federal courts sitting in diversity must apply the *McDonnell Douglas*

burden-shifting scheme as a federal procedural rule."  *Zeinali v. Raytheon Co.*, 636 F.3d 544,

546 (9th Cir. 2011) (applying *McDonnell Douglas* burden-shifting scheme to analyze summary

judgment where plaintiff alleged that defendant "violated the California Fair Employment and

Housing Act (FEHA), Cal. Gov't Code § 12940 *et seq.*"); *Dawson v. Entek Int'l*, 630 F.3d 928,

934-35 (9th Cir. 2011) (rejecting plaintiff's argument that prior Ninth Circuit case applying *McDonnell Douglas* burden-shifting scheme to federal claims did "not apply to state law claims" because the prior case held that the *McDonnell Douglas* burden-shifting scheme was a "federal procedural rule" for *Erie* purposes).

Under the *McDonnell Douglas* burden-shifting scheme, the employee must first establish a prima facie case of discrimination, which requires her to show "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a . . . prohibited . . . discriminatory criterion." *Guz*, 24 Cal. 4th at 355 (quotation marks omitted). The "*McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." *Guz*, 24 Cal. 4th at 354.

Under the *McDonnell Douglas* test, once plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action. If the employer satisfies this burden, the employee must show that reason to be pretext by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Zeinali*, 636 F.3d at 552 (quoting *Dawson v. Entek Int'l*, 630 F.3d 928, 934 (9th Cir. 2011)). If an employee fails to show pretext, the court may grant summary judgment to the employer. *See Guz*, 24 Cal. 4th at 357 (affirming grant of summary judgment to employer because employer satisfied its burden to show a legitimate reason for its adverse employment act which plaintiff failed to rebut).

To establish a prima facie case under a disparate treatment theory of disability discrimination, a plaintiff must show she: (1) "suffered from a disability, or was regarded as suffering from a disability"; (2) "could perform the essential duties of the job with or without reasonable accommodations"; and (3) "was subjected to an adverse employment action because of the disability or perceived disability." *Wills v. Superior Court*, 194 Cal. App. 4th 312, 159-60 (2011); *Green v. State*, 42 Cal. 4th 254, 262, 165 P.3d 118, 123 (2007) ("[I]n order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA,

the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation."); *cf. Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 355 (2000) (discussing same prima facie test as applied to "disparate treatment" theory of age discrimination claim under FEHA).[2]

An employer can "prevail on summary judgment" on a claim based on a disparate treatment theory of disability discrimination under FEHA if the employer shows "either" that: (1) "plaintiff could not establish one of the elements of [the] FEHA claim"; or (2) "there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 745 (9th Cir. 2011).

### ii. Defendant has shown that Plaintiff fails to establish the second element of her prima facie case, namely, that she could perform, with or without accommodation, the essential function of a Package Car Driver

As noted previously, the second element of Plaintiff's prima facie case under a disparate treatment theory of disability discrimination requires Plaintiff to show she "could perform the essential duties of the job with or without reasonable accommodations." *See Wills v. Superior Court*, 194 Cal. App. 4th 312, 159-60 (2011); *Green v. State*, 42 Cal. 4th 254, 262, 165 P.3d 118, 123 (2007) ("[I]n order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation."); Cal. Gov't Code

---

[2] California's disparate treatment theory borrows from federal law because, due to "the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." *Guz*, 24 Cal. 4th at 354; *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1219 (9th Cir. 1998) ("Because California law under the FEHA mirrors federal law under Title VII, federal cases are instructive."); *see also Lyle v. Warner Bros. Television Productions,* 38 Cal. 4th 264, 278 (2006) (discussing race and gender discrimination).

§ 12940(a)(1) ("This part does not prohibit an employer from . . . discharging an employee with a physical . . . where the employee, because of his or her physical . . . disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations.").

Defendant contends that Plaintiff fails to establish the second element of her prima facie case because she could not perform, with or without accommodation, the essential function of a Driver, namely, lifting packages of up to 70 pounds without assistance and up to 150 pounds with assistance. The Court first address the parties' dispute as to whether this aspect of the job was an essential function and concludes that it was. The Court next analyzes whether Plaintiff could perform this essential function without accommodation and concludes that she could not. Finally, the Court analyzes whether Plaintiff could have performed this essential function with accommodation and concludes that Plaintiff fails to clearly identify in her Opposition a reasonable accommodation. Thus, the Court GRANTS Defendant summary judgment as to Plaintiff's claim of disability discrimination in violation of FEHA. Having granted summary judgment on Plaintiff's claim for disability discrimination, the Court also GRANTS Defendant summary judgment on Plaintiff's claim for failure to prevent discrimination and retaliation under FEHA to the extent that claim arises from the same purported discrimination.

### 1. Lifting up to 70 pounds without assistance and up to 150 pounds with assistance was an essential function of the Driver position Plaintiff sought

The parties first dispute that lifting packages of up to 70 pounds without assistance and up to 150 pounds with assistance was an essential function of a Driver position. Evidence of whether a particular function is essential "includes, but is not limited to," the following:

(A) The employer's judgment as to which functions are essential.

(B) Written job descriptions prepared before advertising or interviewing applicants for the job.

(C) The amount of time spent on the job performing the function.

(D) The consequences of not requiring the incumbent to perform the function.

(E) The terms of a collective bargaining agreement.

(F) The work experiences of past incumbents in the job.

(G) The current work experience of incumbents in similar jobs.

Cal. Gov't Code § 12926(f)(2)(A-G).

Defendant provides the following evidence to show that an essential function of a Driver position was lifting packages of up to 70 pounds without assistance and up to 150 pounds with assistance:

- A document ("Driver Essential Job Functions Form") created by Defendant's legal department which describes the "Essential Job Functions" of six "Driver" positions, including a "Utility Driver," as including "lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds and to assist in moving packages weighing up to 150 pounds." NOL 3/4 (Dkt 14) Ex. 45. The document also has the disclaimer that "the essential functions of this job may vary greatly depending upon the size and location of the UPS facility" and "[a]t some locations, employees may not perform all of the essential job functions listed above." *Id.*

- Plaintiff's testimony in her deposition that she "agree[d] that the job of a driver requires [Plaintiff] to be able to do these things" listed in the Driver Essential Job Functions Form, namely, "[l]ift, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds" and "[a]ssist  in moving packages weighing up to 150 pounds," with the caveat that, regarding the word "assist," Plaintiff's experience showed that "at least 80 percent of the time you're moving those packages by yourself." NOL 1/4 (Dkt. 12) Ex. 2 (Pl. Depo. at 40:25-41:18).

- Plaintiff's testimony that she "[a]bsolutely [could] not" have "done the job of utility driver without an accommodation." See NOL 1/4 (Dkt. 12) Ex. 2 (Pl. Depo. at 153:22-154:5).

- The statement in a November 20, 2009, Request for Medical Information by Plaintiff s treating physician, Dr. Baird, that Plaintiff was not "able to perform all of the functions of

his/her position" because she "Cannot lift greater than 20 lbs overhead" and "Cannot lift > 75 lbs with assistance."  NOL 2/4 (Dkt. 13) Ex. 24; Def.'s Reply Statement of Facts 4/4 (Dkt. 34-8) at ¶17.

- The statement in a November 19, 2009, Preliminary Report AME/QME by the AME, Dr. Alban, that Plaintiff's "Permanent disability" meant that she "cannot return to []her usual and  customary work."  NOL 2/4 (Dkt. 13) Ex. 23.

In response, Plaintiff only notes that the Driver Essential Job Functions Form is created by Defendant's legal department and was not a document used to hire Plaintiff.  Opp'n at 11-12. In addition, Plaintiff emphasizes that the Driver Essential Job Functions Form expressly states that "the essential functions of this job may vary greatly depending upon the size and location of the UPS facility" and "[a]t some locations, employees may not perform all of the essential job functions listed above."  *See* NOL 3/4 (Dkt 14) Ex. 45.

While the Court agrees with Plaintiff that the Driver Essential Job Functions Form would be inadequate by itself, Defendant has corroborated the essential functions listed in that form with Plaintiff's own testimony about her experience in the job.  Thus, the Court concludes that Defendant has shown, and Plaintiff has not adequately rebutted, that lifting packages of up to 70 pounds without assistance and up to 150 pounds with assistance was an essential function of a Driver position.  *See Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 744 n.18 (9th Cir. 2011) ("[Plaintiff's] written job description, supported by numerous employee accounts, can be relied upon to establish the essential functions of the . . . position, regardless of what [Plaintiff's] individual experience in that position may have entailed.").

## 2.  Plaintiff's ability to perform without accommodation

The Court next analyzes whether Plaintiff could perform the essential function of lifting up to 70 pounds without accommodation and concludes that she could not.

As noted before, Defendant has presented both the testimony of Plaintiff, as well as documentation by her treating physician and the AME from her workers compensation case, that Plaintiff could not fulfill this essential function without accommodation.  To review, that evidence is as follows:

- Plaintiff's testimony that she "[a]bsolutely [could] not" have "done the job of utility driver without an accommodation."  See NOL 1/4 (Dkt. 12) Ex. 2 (Pl. Depo. at 153:22-154:5).

- The statement in a November 20, 2009, Request for Medical Information by Plaintiff's treating physician, Dr. Baird, that Plaintiff was not "able to perform all of the functions of his/her position" because she "Cannot lift greater than 20 lbs overhead" and "Cannot lift > 75 lbs with assistance."  NOL 2/4 (Dkt. 13) Ex. 24; Def.'s Reply Statement of Facts 4/4 (Dkt. 34-8) at ¶17.

- The statement in a November 19, 2009, Preliminary Report AME/QME by the AME, Dr. Alban, that Plaintiff's "Permanent disability" meant that she "cannot return to []her usual and  customary work."  NOL 2/4 (Dkt. 13) Ex. 23.

Plaintiff does not contend that she could have performed the Driver position without accommodation; instead, she focuses only on whether an essential function of the Driver position included lifting up to 70 pounds without assistance.  Having rejected Plaintiff's argument on that point in the previous subsection, the Court concludes that Plaintiff has not substantively shown that she could perform the Driver position without accommodation.  *See Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 744, 746 n.23 (9th Cir. 2011) (affirming summary judgment for employer on FEHA disability discrimination claim and holding that "there is no genuine issue of material fact as to [plaintiff's] inability to perform the essential functions of the . . . position," which "included 'frequently' lifting up to thirty pounds from waist to overhead, 'occasionally' lifting up to fifty pounds from floor to waist, and 'frequently' carrying up to fifty pounds for as long as one hundred feet" because there was evidence that plaintiff's doctor's "report only released [plaintiff] to spend a maximum of thirty-five percent of his day lifting or carrying between twenty-one and fifty pounds, whereas, [an employee in the position] is required to carry up to fifty pounds for up to sixty-six percent of the day").

### 3.  Plaintiff's ability to perform with accommodation

Alternatively, a plaintiff can establish the second element of her prima facie case if she can show that she could have performed the essential functions of the desired position with accommodation.  *See* Cal. Gov't Code § 12940(a)(1) ("This part does not prohibit an employer from . . . discharging an employee with a physical . . . where the employee, because of his or her physical . . . disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations.").

However, as Defendant notes, Plaintiff's Opposition fails to identify the reasonable accommodation that would have allowed her to perform in the Driver position.  *See* Reply at 11. Instead, Plaintiff launches into an "undue hardship" analysis.  *See* Opp'n 18.  As Defendant observes, that puts the cart before the horse because a court need only examine whether a plaintiff's proposed reasonable accommodation would pose an undue hardship on the employer *if* the plaintiff's opposition first identifies a reasonable accommodation.  *See* Reply at 12.

Thus, because Plaintiff's Opposition does not identify any reasonable accommodation, the Court concludes that Plaintiff has failed to show that she could have performed the Driver position with reasonable accommodation.[3]

### iii.  Conclusion

---

[3] At oral argument, Plaintiff suggested four kinds of accommodations: (1) requiring Defendant's other employees to load the heavy packages on the floor of the truck and then allowing Plaintiff to use a handcart to maneuver them; (2) allowing Plaintiff to use her seniority to bid on routes that were less likely to have heavy packages; (3) allowing Plaintiff to call for assistance from other employees when a package exceeded her weight-lifting limit; and (4) having Defendant reduce the frequency of heavy packages in Plaintiff's truck.  The problem with discussing these proposed accommodations for the first time at oral argument is that Defendant has not had an opportunity to respond in its brief to these proposed accommodations, nor is it clear how the record supports these proposed accommodations.  Thus, the Court will not consider them here.

In sum, Defendant has shown that Plaintiff has failed to establish the second element of Plaintiff's prima facie case under a disparate treatment theory of disability discrimination, namely, that Plaintiff "could perform the essential duties of the job with or without reasonable accommodations." *See Wills v. Superior Court*, 194 Cal. App. 4th 312, 159-60 (2011). Thus, the Court GRANTS Defendant summary judgment as to Plaintiff's claim of disability discrimination in violation of FEHA. Having granted summary judgment on Plaintiff's claim for disability discrimination, the Court also GRANTS Defendant summary judgment on Plaintiff's claim for failure to prevent discrimination and retaliation under FEHA to the extent that claim arises from the same purported discrimination.

> **b. Plaintiff's claim for failure to accommodate disability under FEHA and, to the extent it was ever pleaded, a claim for disability discrimination under FEHA due to failure to engage in an interactive process**

The FEHA creates two independent causes of action for: (1) "fail[ure] to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations" (Cal. Gov't Code § 12940(n)); and (2) "fail[ure] to make reasonable accommodation for the known physical . . . disability of an . . . employee," unless accommodation would cause the employer an "undue hardship" (Cal. Gov't Code § 12940(m)). *See Wysinger v. Auto. Club of S. California*, 157 Cal. App. 4th 413, 417, 425 (2007) (holding that these two statutory sections "involve separate causes of action and proof of different facts").[4]

---

[4] Cal. Gov't Code § 12940(m) ("For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation."); Cal. Gov't Code § 12940(n) ("For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if

Although these two statutory parts create separate causes of action, they relate in that there may be "no failure to provide a required accommodation" under Cal. Gov't Code § 12940(m) "because the parties never reached the stage of deciding which accommodation was required" due to one of the parties having "prevented this from happening by its refusal to engage in the interactive process."  *See Wysinger*, 157 Cal. App. 4th at 425; *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 266 (2000) ("[N]either side has a right to obstruct the process. [Employee-plaintiff] could not legitimately refuse to talk to [employer-defendant's] personnel who were ready to offer assistance in identifying and locating a suitable position whether or not they had a particular opening in mind.").

First, although the Court agrees with Defendant that it is not clear Plaintiff ever pled a claim for failure to engage in the interactive process, the Court concludes that, even if she had, Defendant is entitled to summary judgment on that claim.  Next, the Court concludes that Defendant is entitled to summary judgment on the claim Plaintiff clearly pled, which is a failure to accommodate Plaintiff's disability.

### i. Failure to engage in the interactive process

One of the ways that an employer can fail to engage in the interactive process required by FEHA is where: (1) the plaintiff "present[s] the employer . . . with a concise list of restrictions which must be met to accommodate the employee"[5]; (2) upon receipt, the employer fails to initiate at least "an informal, interactive process" with the employee "[t]o determine an appropriate reasonable accommodation."[6]  *See* Cal. Bus. Law Deskbook § 14:11 (2011 ed.) ("[For an FEHA claim based on a failure to engage in the interactive process, the] employee is not required to request any particular accommodation in order to trigger an employer's duty to engage in the interactive process.  He or she must, however, provide the employer at the earliest

---

any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.").

[5] *See Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th at 266.

[6] *See Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 821 (2001).

opportunity with a concise list of restrictions it must meet to accommodate the employee.") (quotation marks omitted); *cf. Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (explaining that, under ADA federal statute analogous to California's FEHA, the "interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective."). This interactive process often is an "ongoing," rather than a "single action." *See Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 821 (2001).

The Court notes that this analysis is complicated by the fact that Plaintiff's restrictions due to disability, as reflected by her own records and the statements of her treating physician and AME, appears to have changed significantly between October 30, 2009, and February 2010. Specifically, these varying and conflicting statements by physicians are that: (1) on October 30, 2009, Dr. Baird "believe[d]" Plaintiff could return to work in mid-November without restrictions, but also indicating that she still had sharp pain; (2) on November 19, 2009, Dr. Alban stating that Plaintiff could not lift more than 10 pounds and thus was no longer able to perform her duties as a driver; (3) on November 20, 2009, Dr. Baird revised his opinion to state that Plaintiff "cannot lift greater than 20 lbs overhead" and "cannot lift > 75 lbs with assistance"; and (4) on February 26, 2010, a physician stated that Plaintiff is "able to return to work" immediately but with "restrictions" including "not lifting over 40 pounds."

On January 8, 2010, UPS Occupational Health Supervisor Bethany Duncan and UPS District Workforce Planning Manager Steve Redding met with Plaintiff and her union representative to discuss Dr. Baird's restrictions and potential accommodations. Pl. Depo. 145:11-20. The same day, Plaintiff filled out an "Accommodation Checklist" in which Plaintiff identified "Current Position: Pkg [sic] Car Driver" and "Current Limitations in Position as a Result of Self-Identified Condition: Weight limit restrictions 20 lbs + overhead restriction." NOL 2/4 (Dkt. 13) Ex. 26 at 192. Plaintiff indicated her "Desired Accommodation(s) With Respect To Current Position" as "Full time Air Driver," "Shuttle Driver," "Automatic transmission power steering," "Reducing frequency of heavy packaging." *Id.* Plaintiff

identified "Other Desired Accommodations" as "full time only," "porter," "combo clerk," "clerical," "customer counter," or "anything."  *Id.*

Defendant filled out the Accommodation Checklist on January 22, 2010, with an explanation as to why each of Plaintiff's requested accommodations were not available.  For example, the Accommodation Checklist shows that the accommodation of transfer to a new position of "Clerk (combo)," "Porter," or "Customer Counter" was not possible because there was no "Availability."  *Id.*  at 194.  For the accommodation of transfer to a new position of "FT Air Driver," "Shuttle Driver," or "Less pkgs [sic] in car," there was a "conflict" with the "collective bargaining agreement."  *Id.*  at 194.

Plaintiff does not appear to contend or produce evidence that Defendant's statements regarding the unavailability of the accommodations Plaintiff sought were untrue.  Rather, Plaintiff contends that Defendant failed to engage in the interactive process because it failed to: (1) analyze the requirements of the particular job that Plaintiff sought on October 30, 2009, namely, a Package Car Driver; (2) consult with Plaintiff about job-related limitations; (3) identify a potential accommodation; and (4) consider Plaintiff's preferred accommodation, which was to "be returned to her package car driver position."  Opp'n at 13 (citing *Zivkovic*).

The Court concludes that Plaintiff's unfounded accusations are without merit.  First, Plaintiff has presented no evidence that Defendant failed to analyze the requirements of a Package Car Driver position.  Second, Plaintiff's assertion that Defendant failed to consult with Plaintiff about job-related limitations is belied by the fact that, as Plaintiff admits, on October 30, 2009, Defendant required Plaintiff to obtain a medical examination regarding the restrictions placed on her by her disability.  Third, Plaintiff's argument that Defendant failed to engage in an interactive process when it failed to identify a potential accommodation misstates the law because the interactive process requires a Defendant to *make a good-faith effort* to identify the potential accommodation, but a Defendant is not required to actually identify such accommodation; indeed, sometimes there may not be any accommodation possible.  Finally, Plaintiff's contention that Defendant failed to consider Plaintiff's preferred accommodation, which was to be returned to her package car driver position, is unavailing because the

Accommodation Checklist shows that she listed this position as the "Current Position" for which she had "Limitations" and thus was seeking accommodation, not the position that she sought to do as an accommodation.  *See* NOL 2/4 (Dkt. 13) Ex. 26 at 192.

Plaintiff also vaguely argues that Defendant failed to engage in the interactive process because one of Defendant's employees, Redding: (1) "never had any discussions with [Plaintiff] about any alternative accommodations"; and (2) rejected Plaintiff's request for accommodation, citing a March 2010 email request by Plaintiff.  *See* Opp'n at 16.  These arguments are unavailing because, while Redding may not have personally met with Plaintiff, other representatives from Defendant did meet with Plaintiff and Plaintiff cites no authority that the interactive process requires a particular employee to personally discuss accommodations with Plaintiff.  In addition, the March email to which Plaintiff refers shows that Defendant actually considered but rejected her request.  The document Plaintiff cites is an email sent on March 10, 2010, in which Beth Duncan asks "Do we have any 'full-time only' union positions in Laguna or Anaheim that are not required to lift more than 40 lbs?"  *See* NOL 2/4 (Dkt. 13) Ex. 33.  Redding replied "No, not at this time." *Id.*

Finally, Plaintiff contends that, even if Defendant could not accommodate Plaintiff "in early January 2010, it failed to make any attempt to accommodate to do so or even engage in an interactive process later in January or in February 2010 when her requested accommodations changed."  Opp'n at 17.  The March email itself belies this statement; Defendant clearly considered the request, but was unable to find such positions.

Thus, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's claim for disability discrimination under FEHA to the extent it is based on a failure to engage in the interactive process.

### ii.  Failure to accommodate disability

To show that an employer failed to accommodate a disability as required by FEHA, a plaintiff must show that she: (1) suffered from a disability, or was regarded as suffering from a disability; and (2) could perform the essential duties of the job *with* reasonable accommodation. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000) (discussing earlier version of

statute where language of current Cal. Gov't Code § 12940(n) appeared as 12940(k) to explain the "important differences" between the "elements of a failure to accommodate claim . . . [and claim under] Government Code section 12940[(a)]" are that the second element in a failure to accommodate claim is shown "by establishing that [the employee] can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position" and " the third element [in a Section 12940(a) claim]—establishing that an 'adverse employment action' was caused by the employee's disability—is irrelevant to [a failure to accommodate] claim.").

      As noted previously, Plaintiff's Opposition does not clearly indicate what reasonable accommodation Defendant failed to provide to her.  Thus, the Court GRANTS Defendant summary judgment on Plaintiff's claim for failure to accommodate under the FEHA.

### iii.  Conclusion

      In sum, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's claim for disability discrimination under FEHA to the extent it is based on a failure to engage in the interactive process.  The Court also GRANTS Defendant summary judgment on Plaintiff's claim for failure to accommodate under the FEHA.

### c.  Plaintiff's Opposition fails to substantively address her claims for age discrimination, retaliation, and wrongful termination

      In its Motion, Defendant contended that Plaintiff lacks evidence to prove her remaining claims for age discrimination in violation of FEHA, failure to prevent discrimination and retaliation under FEHA, retaliation, and wrongful termination in violation of public policy.  In her Opposition, Plaintiff barely addresses these claims and certainly never produces evidence to substantiate them.

      First, regarding Plaintiff's claim for age discrimination, Plaintiff notes only that Defendant hired 580 "seasonal helpers" in Plaintiff's geographic location between October 30, 2009, and Plaintiff's retirement and that the average age of these workers is younger than Plaintiff's age.  Opp'n at 22-23.  However, the Court agrees with Defendant that Plaintiff has not demonstrated why these seasonal helpers are appropriate comparators, especially given that

Plaintiff does not appear to contend that she ever sought to be accommodated by being demoted to a seasonal employee. *See* Reply at 18.

Second, regarding Plaintiff's claims for retaliation and failure to prevent discrimination and retaliation under FEHA, Defendant correctly notes that Plaintiff only obliquely addresses these claims in three lines and without citation to either the record or authority. See Opp'n at 22:3-5; Reply at 17-18. Such a brief discussion is not sufficient to defeat summary judgment. Thus, the Court GRANTS Defendant summary judgment on Plaintiff's claim for retaliation.

Finally, regarding Plaintiff's claim for wrongful termination in violation of public policy, Defendant is correct that Plaintiff only allusion to this claim is through a cryptic statement that Defendant's treatment of Plaintiff was "akin to constructive termination." See Opp'n at 21:14-15; Reply at 19. Such an brief allusion is not sufficient to defeat summary judgment.

Thus, the Court GRANTS Defendant summary judgment as to Plaintiff's claims for age discrimination, failure to prevent discrimination and retaliation under FEHA, retaliation, and wrongful termination in violation of public policy.

**d. Plaintiff cites no authority for the proposition that an employer violates the FEHA by requiring an employee who is returning from two years of medical leave due to disability to undergo evaluation to determine if that employee has any restrictions due to her disability**

Plaintiff argues that Defendant "is responsible for all events and damages to [Plaintiff] after" October 30, 2009. *See* Opp'n at 1. Plaintiff's theory seems to be that Defendant is liable because Plaintiff sought to be reinstated on October 30, 2009, after two years of medical leave due to disability but did not expressly request a disability accommodation and, despite the lack of a request by Plaintiff, Defendant required Plaintiff to undergo medical evaluation to determine if Plaintiff had any restrictions due to her pre-existing disability.

Plaintiff cites no authority for her proposition that an employer who requires an evaluation of an employee in these circumstances is per se liable, nor does Plaintiff even indicate the statutory or common law basis for such liability. Indeed, courts have found that an employer does not act unreasonably for purposes of a failure to accommodate claim where the

employer "ask[s] for the documentation" of plaintiff's disability. *See Swonke v. Sprint Inc.*, 327 F. Supp. 2d 1128, 1137 (N.D. Cal. 2004) ("Plaintiff also fails to provide any authority indicating that [defendant] was not entitled to ask for the documentation" of plaintiff's disability); *see also Prilliman v. United Air Lines, Inc.*, 53 Cal.App.4th 935, 950 (1997) (suggesting employer has duty to initiate FEHA interactive process even if employee does not request it if the employee's disability is known or apparent).

Given Plaintiff's absence of authority, the Court agrees with Defendant that it is not liable per se for requesting Plaintiff, who sought to return from a two-year leave of absence due to disability, to undergo an examination to determine if she had any restrictions after receiving Dr. Baird's October 30, 2009, letter with its arguably ambiguous statement about Plaintiff's ability to return in mid-November without restrictions. *See* Reply at 8.

Having granted Defendant summary judgment on all of Plaintiff's claims, the Court need not address Defendant's other arguments, such as judicial estoppel or Plaintiff's failure to suffer an adverse employment action.

## IV.    Disposition

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment on all of Plaintiff's claims.


DATED:  October 16, 2012


_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE